

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00373-CV

JPMORGAN CHASE BANK, N.A.                    APPELLANT

V.

PROFESSIONAL PHARMACY II                     APPELLEE

----------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 17-231360-08

----------

## OPINION

----------

### I. Introduction

Appellee Professional Pharmacy II (Pharmacy II) sued Washington Mutual Bank, F.A. (WaMu), alleging, among other things, breach of contract and negligence in connection with the opening of a checking account and the garnishment of funds from that account. At the conclusion of a five-day jury trial, the jury found both parties negligent, apportioned eighty-five percent of the negligence to WaMu and fifteen percent to Pharmacy II, and found that

Pharmacy II's damages totaled $180,683. The trial court entered judgment on the verdict against Appellant JP Morgan Chase Bank, N.A. (JP Morgan), as the acquirer of certain assets and liabilities of WaMu from the Federal Deposit Insurance Corporation acting as receiver,[1] awarding Pharmacy II $153,580.55 in damages, $22,681.12 in prejudgment interest, and postjudgment interest.

JP Morgan appealed. In thirteen issues, it contends that Pharmacy II failed to obtain a finding that it is a partnership, which bars its recovery; Pharmacy II lacks standing to raise a negligence claim; WaMu owed no legal duty to Pharmacy II; the jury's answer to the negligence question was immaterial because there was no contractual relationship between WaMu and Pharmacy II; the economic loss rule bars Pharmacy II's recovery of economic damages on its negligence claim; the evidence is legally and factually insufficient to support the jury's findings that WaMu failed to exercise ordinary care, that WaMu's negligence was a proximate cause of Pharmacy II's injuries, and that Pharmacy II suffered $180,683 in damages; Pharmacy II's negligence claim is barred by limitations, res judicata, and collateral estoppel; the evidence is legally and factually insufficient to support the jury's failure to find that Pharmacy II's partners were negligent; and the trial court erred by awarding prejudgment interest. For the reasons that follow, we affirm the trial court's judgment conditioned on a

_____

[1]Shortly after Pharmacy II filed suit against WaMu in July 2008, the United States Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation as receiver. It is undisputed that this suit was among the assets and liabilities acquired by JP Morgan.

remittitur.

## II. Background

In late 2001 and early 2002, Pamela Ashu, Fidelis Bisong, and Tusmo Jama formed Professional Pharmacy Plus (Pharmacy Plus) for the purpose of opening a retail pharmacy that delivered prescriptions to customers. Ashu, Bisong, and Jama operated Pharmacy Plus as a partnership in which each of them held an approximate one-third ownership interest. A year later, Ashu, Bisong, and Jama formed Professional Pharmacy II (Pharmacy II) for the purpose of opening a second pharmacy. Like Pharmacy Plus, Pharmacy II was operated as a partnership, and Ashu, Bisong, and Jama each held an approximate one-third ownership interest in the partnership. There was no written partnership agreement for either Pharmacy Plus or Pharmacy II.

Ashu, Bisong, and Jama filed an assumed name certificate for Pharmacy II. Ashu obtained a pharmacy license and Employer Identification Number (EIN) in the name of Pharmacy II. When she applied for the EIN with the Internal Revenue Service (IRS), Ashu stated that Pharmacy II was a partnership. Ashu also registered Pharmacy II in the Texas Department of Public Safety's Controlled Substances Registration Program and with the Drug Enforcement Administration and applied for a Medicaid identification number on Pharmacy II's behalf.

On January 14, 2003, Ashu and Bisong went to the WaMu branch where Pharmacy Plus had a business checking account to set up a checking account

3

for Pharmacy II. Bisong testified that Pharmacy Plus's checking account at WaMu was a partnership account. Ashu and Bisong met with Naomi Moller, the manager of the branch, to set up the account for Pharmacy II. Jama was not present.[2] Both Ashu and Bisong testified that it was their intent to set up a partnership account for Pharmacy II similar to Pharmacy Plus's account and that they informed WaMu of their intent when opening the account for Pharmacy II. Ashu and Bisong testified that they provided WaMu with the assumed name certificate for Pharmacy II, Pharmacy II's EIN, a completed Form W-9,[3] a partially completed Texas Medicaid Vendor Direct Deposit Authorization bearing Pharmacy II's EIN and identifying Pharmacy II as the payee, and personal identification.

The assumed name certificate for Pharmacy II reflected that it was filed by Ashu, Bisong, and Jama. Moller testified that she asked Ashu and Bisong if they were married because the third person on the assumed name certificate was not present and she could not open the account as a partnership account without a written partnership agreement. Moller informed Ashu and Bisong that because they were married to each other, they could open a joint sole proprietorship

---

[2]Jama was also not present when Ashu and Bisong opened Pharmacy Plus's account.

[3]Ashu testified that a Form W-9 is a form generated by the IRS that can be completed by a business to certify to a third party that the business's name, address, and EIN are true and correct. Ashu stated that she indicated that Pharmacy II was a partnership on the Form W-9 she provided to WaMu when opening Pharmacy II's checking account.

account for Pharmacy II. WaMu's business banking account disclosures and regulations in place in January 2003 describe a sole proprietorship account as

> [a] business account opened by the owner(s) of a business which is not a corporation, association, limited liability company or partnership. Withdrawals are generally paid at the direction of the owner(s) or their designated agents. Owners(s) must be an individual depositor unless husband and wife in states permitting such. If there is more than one owner, the owners may select a joint ownership account.

Moller further testified that in January 2003, an account could be titled in either an assumed name or a person's name, followed by "d/b/a" and the assumed name, and that as the branch manager, she was able to open a joint sole proprietorship account titled in an assumed name.

Moller testified that she prepared the Master Account Agreement for the account (the 3775 Account) using the information provided by Ashu and Bisong. The Master Account Agreement provided that the title of the 3775 Account was "Professional Pharmacy II," listed Pharmacy II's EIN as the tax ID number for the account, and stated that

> [t]he account and deposits opened under this Agreement shall be of the following type:

> JOINT SOLE PROPRIETORSHIP: THIS ACCOUNT IS HELD IN JOINT TENANCY WITH RIGHT OF SURVIVORSHIP UNLESS INDICATED OTHERWISE.

> { } WE SELECT JOINT TENANCY WITHOUT RIGHT OF SURVIVORSHIP.

Moller testified that after she prepared the Master Account Agreement, she printed out two copies, one for WaMu and one for the customer. Moller testified

5

that only WaMu's copy is signed by the customer. She asked Ashu and Bisong to review WaMu's copy before signing it to make sure the account number, the account name, the account ownership, the tax identification number, and their names were correct. Ashu and Bisong were listed as owners at the bottom of the Master Account Agreement, and their signatures were beneath their printed names. Bisong testified that the signatures on the Master Account Agreement belonged to him and Ashu, but he denied that it was a true and correct copy of the document that he signed when he opened the 3775 Account.

Moller testified that when she opened the 3775 Account, she also completed a "Business Account Opening Checklist," which provided guidelines for opening a business account at WaMu. The checklist for the 3775 Account indicated that it was opened as a joint sole proprietorship account and that the following required information and documentation was received by WaMu: primary and secondary ID for business owners; assumed name certificate; names of the business owners; physical address of the business; home address of the business owners; and the driver's license of the business owner or personal ID number of the business issued by the Department of Public Safety. Moller also completed the financial institution information on the Texas Medicaid Vendor Direct Deposit Authorization, which identified Pharmacy II as the payee.

Moller testified that consistent with her normal and customary practice in January 2003, she put the customer copy of the Master Account Agreement, WaMu's business banking account disclosures and fees, and a starter

6

checkbook into a new account folder. Bisong testified that he received the folder but he did not read the documents inside the folder. Ashu also testified that she did not review the documents. Subsequently, Ashu and Bisong, on behalf of Pharmacy II, executed a durable power of attorney for the 3775 Account appointing Jama as agent.

Bisong testified that the 3775 Account was used as Pharmacy II's operating account and that the funds Pharmacy II received from Medicaid were deposited directly into the 3775 Account. Ashu testified that Medicaid payments, payments from insurance companies, and retail revenue also were deposited into the 3775 Account. She further testified that Pharmacy II used the funds in the 3775 Account for payroll, lease payments, and other business expenses, such as the purchase of pharmaceuticals. Jama testified that she endorsed checks payable to Pharmacy II and deposited those checks into the 3775 Account.

At some point prior to January 2008, Bisong and Juliet Eboh formed Excel Pharmacy, Inc. (Excel). Bisong and Eboh each had a fifty percent ownership interest in Excel. Excel had two retail locations, each of which it leased from Cambridge Gorbutt MOB, L.P. (Cambridge). Bisong personally guaranteed the two leases. Excel failed to make the required rental payments and defaulted on both of the leases. As a result, Cambridge filed suit against Excel, Eboh, and Bisong.

Cambridge non-suited Eboh, and the trial court granted Cambridge's motion for default judgment against Excel and Cambridge's motion for summary

7

judgment against Bisong. On July 5, 2007, the trial court entered judgment against Bisong for $190,903.74 in damages, plus $9,000 in attorney's fees, $713 in court costs, postjudgment interest, and conditional appellate attorney's fees. Seeking to collect the judgment, Cambridge filed an application for writ of garnishment against WaMu on November 13, 2007, pursuant to which the district clerk issued a writ of garnishment. *See* Tex. R. Civ. P. 659. WaMu was served with the writ on December 26, 2007. *See* Tex. R. Civ. P. 663.

Charles Farnsworth, the national production manager for WaMu's levy department in 2007 and 2008, testified that WaMu followed its policies and procedures regarding Texas garnishment proceedings with respect to the writ of garnishment. Upon receipt of the writ of garnishment, WaMu froze the accounts that Farnsworth determined belonged to Bisong. Farnsworth examined the Master Account Agreement to ensure that Bisong was the owner of the 3775 Account. Based upon his examination, Farnsworth concluded that the 3775 Account was a joint sole proprietorship account held in joint tenancy with right of survivorship and that Ashu and Bisong were joint owners of the 3775 Account. He also stated that he never looked at the account title for purposes of garnishment.

Farnsworth testified that WaMu notified Bisong by letter dated December 28, 2007, that it had received the writ of garnishment and that as a result, the funds in the 3775 Account were frozen. Bisong testified that he had no knowledge of the writ because Ashu and he were in Africa visiting Bisong's sick

8

mother in December 2007.[4]  Ashu learned in early January 2008 that the 3775 Account had been frozen and notified Jama.  Jama went to several WaMu branches and contacted WaMu's attorney in an attempt to unfreeze the funds, but she was unsuccessful because her name was not on the 3775 Account.

On January 22, 2008, WaMu filed a verified answer to the writ of garnishment, stating that it was indebted to Bisong in the amount of $116,683. *See* Tex. R. Civ. P. 665.  WaMu identified three accounts in which these funds were held—(1) an account ending in 0415, with a balance of $1,619.26, owned in the names of Ashu and Bisong; (2) an account ending in 7860, with a balance of $7,568.66, owned in the names of Bisong or Ashu; and (3) the 3775 Account, with a balance of $107,495.08, owned in the name of Pharmacy II.  According to Farnsworth, WaMu's answer was reviewed by WaMu's levy department to ensure that the information in the answer was correct, and Luis Westendorf, an employee in the levy department, signed the verification.  WaMu served a copy of the answer on Bisong, Ashu, and Pharmacy II by mail.  *See* Tex. R. Civ. P.

---

[4]Service of the writ of garnishment on Bisong was required by rule 663a of the rules of civil procedure.  *See* Tex. R. Civ. P. 663a ("The defendant shall be served in any manner prescribed for service of citation or as provided in Rule 21a with a copy of the writ of garnishment, the application, accompanying affidavits and orders of the court as soon as practicable following the service of the writ."); *Zeecon Wireless Internet, LLC v. Am. Bank of Tex., N.A.*, 305 S.W.3d 813, 817 (Tex. App.—Austin 2010, no pet.) (stating that rule 663a requires that the judgment debtor be served with certain garnishment documents); *see also Lease Fin. Grp., LLC v. Childers*, 310 S.W.3d 120, 125 (Tex. App.—Fort Worth 2010, no pet.) ("While a judgment debtor is not a necessary party to the garnishment action, the rules require that he be served under rule 663a.").  It does not appear from the record before us that Bisong was served as required by rule 663a.

21a.

In an attempt to settle the claim with Cambridge, Bisong's counsel provided to Cambridge a letter from an assistant financial center manager at WaMu stating that the 3775 Account was a business account. These settlement efforts were unsuccessful, and on February 4, 2008, the trial court entered an agreed judgment between Cambridge and WaMu providing that Cambridge recover $116,183 from Bisong's accounts at WaMu to be credited against the judgment and that WaMu recover $500 in attorney's fees from Bisong's accounts. *See* Tex. R. Civ. P. 668. On or about February 12, 2008, WaMu withdrew $116,683 from the 3775 Account. On February 14, 2008, Pharmacy II filed a plea in intervention and application for temporary restraining order and temporary injunction in an attempt to prevent the money withdrawn from the 3775 Account from being transferred from WaMu to Cambridge. *See* Tex. R. Civ. P. 60, 680. Ashu testified that the trial court denied Pharmacy II's request for injunctive relief. Ashu explained that it was her understanding that the request was denied because it was untimely. On February 20, 2008, WaMu paid $116,183 to Cambridge.

As a result of the garnishment, Pharmacy II filed this suit against WaMu seeking to recover the garnished funds, asserting claims for breach of contract, wrongful garnishment, negligence, conversion, and negligent misrepresentation against WaMu. Pharmacy II also sought a declaratory judgment that (1) Pharmacy II was at all times the account holder and creditor of the 3775 Account;

(2) WaMu was not indebted to Bisong in the amount of $116,683 as of January 18, 2008; (3) any transfer of funds from the 3775 Account to satisfy any debt owed by Bisong was invalid; (4) the funds held in the 3775 Account were the partnership property of Pharmacy II; and (5) Pharmacy II was a general partnership. Pharmacy II also sought exemplary damages and attorney's fees. JP Morgan filed third-party claims against Cambridge, including a claim for money had and received. *See* Tex. R. Civ. P. 38. JP Morgan also designated Ashu, Bisong, Jama, and Cambridge as responsible third parties.

The trial court submitted Pharmacy II's breach of contract and negligence claims to the jury. In response to jury question number one, "Did [Pharmacy II] and [WaMu] agree to a partnership account for the account ending in number 3775 on January 14, 2003?", the jury answered "no." Jury question number two asked, "Did . . . Bisong and WaMu agree to a joint sole proprietorship account for the account ending in number 3775 on January 14, 2003?" Because jury question number two was conditioned on a "yes" answer to jury question number one, the jury did not answer jury question number two. The jury found that the negligence of both WaMu and Pharmacy II caused injury to Pharmacy II and that Ashu, Bisong, Jama, and Cambridge were not negligent. The jury also found for WaMu on its money had and received claim against Cambridge.[5]

---

[5]JP Morgan moved to modify the judgment to include judgment against Cambridge based upon this finding. The trial court denied the motion. On appeal, JP Morgan raised a fourteenth issue, arguing that if this court affirmed the judgment against JP Morgan, we should modify the judgment to award

11

## III. Discussion

## A. Standing

In its second issue, JP Morgan argues that Pharmacy II lacks standing to complain of any alleged negligence by WaMu in the opening of the 3775 Account or in the payment of funds out of the 3775 Account. Because standing is a component of subject matter jurisdiction, we review Pharmacy II's standing de novo. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993)). In determining whether a plaintiff has standing, we construe the petition in favor of the plaintiff and if necessary, review the entire record to determine if any evidence supports standing. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

Standing consists of some interest peculiar to the person individually and not as a member of the general public. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). It requires that there be (1) "'a real controversy between the parties'" that (2) "'will be actually determined by the judicial declaration sought.'" *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*,

---

$116,183 to JP Morgan from Cambridge. Upon JP Morgan's motion, we dismissed its appeal as to Cambridge only. *See JP Morgan Chase Bank, N.A. v. Prof'l Pharmacy II*, No. 02-11-00373-CV, 2012 WL 1947511, at *1 (Tex. App.— Fort Worth May 31, 2012, no pet.) (mem. op.). Thus, we do not address JP Morgan's fourteenth issue. *See* Tex. R. App. P. 47.1.

12

925 S.W.2d 659, 662 (Tex. 1996) (quoting *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). Implicit in these requirements is that litigants are properly situated to be entitled to a judicial determination. *Austin Nursing Ctr.*, 171 S.W.3d at 849.

Based upon the jury's answer of "no" to jury question number one, which asked, "Did [Pharmacy II] and [WaMu] agree to a partnership account for the account ending in number 3775 on January 14, 2003?", JP Morgan asserts that Pharmacy II did not have a partnership account. JP Morgan argues that based upon the terms of Master Account Agreement, Ashu and Bisong are owners of the 3775 Account, and the Master Account Agreement cannot be rewritten to make Pharmacy II the owner of the 3775 Account. Therefore, JP Morgan argues, Pharmacy II has no justiciable interest in the payment of funds out of the account.

When determining whether Pharmacy II has standing, we must determine whether Pharmacy II has a "'cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by defendant.'" *See Exxon Corp v. Pluff*, 94 S.W.3d 22, 28 (Tex. App.—Tyler 2002, pet. denied) (quoting *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976)). A party has standing when it is personally aggrieved. *Nootsie*, 925 S.W.2d at 661. "Standing deals with whether a litigant is the proper person to bring a lawsuit, not whether that party can ultimately prevail on the claims asserted." *Faulkner v. Bost*, 137 S.W.3d 254, 259 (Tex. App.—Tyler 2004, no pet.); *see also Hunt*, 664 S.W.2d at 324 (holding "the question of standing is distinct from the question of proof and

13

once the plaintiffs alleged an interest peculiar to themselves and distinguishable from the public generally, they were entitled to a factual hearing"). A partnership has standing to file suit in its partnership, assumed, or common name. Tex. R. Civ. P. 28; *Allied Chem. Co. v. DeHaven*, 824 S.W.2d 257, 264 (Tex. App.— Houston [14th Dist.] 1992, no writ).

Pharmacy II's failure to obtain a jury finding that Pharmacy II and WaMu agreed to a partnership account does not preclude it from having a justiciable interest in the funds in the 3775 Account. In its petition, Pharmacy II alleged it opened the 3775 Account as a business account using its assumed name certificate and EIN number, it used the 3775 Account as its operating account, and all funds deposited into the 3775 Account were acquired in Pharmacy II's name in the regular course of business and were partnership property. Pharmacy II presented evidence that Medicaid payments, payments from insurance companies, retail revenue, and checks payable to Pharmacy II were deposited into the 3775 Account and that Pharmacy II used it as its operating account. Thus, the funds in the 3775 Account were partnership funds that belonged to Pharmacy II. *See* Tex. Bus. Org. Code Ann. §§ 152.101 ("Partnership property is not property of the partners."), 152.102(a)(1) (West 2012) (stating that property is partnership property if acquired in the name of the partnership). Pharmacy II further pled that as a result of WaMu's negligence, WaMu paid funds out of the 3775 Account to satisfy a judgment against Bisong. Thus, we conclude that Pharmacy II has a justiciable interest in funds paid out of

14

the 3775 Account and, therefore, has standing to complain of any alleged negligence by WaMu in the opening of the 3775 Account and in the payment of funds out of the 3775 Account. We overrule JP Morgan's second issue.

**B. Capacity and Judicial Estoppel**

In its first issue, JP Morgan argues that Pharmacy II failed to prove that it could recover in the capacity in which it sued. JP Morgan contends that Pharmacy II is barred from any recovery in this case because it failed to prove and obtain a jury finding that it is a partnership, and alternatively, Pharmacy II is judicially estopped from claiming it is a partnership.

### 1. Capacity

Citing *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124 (Tex. App.—Fort Worth 2011, pet. dism'd), Pharmacy II argues that JP Morgan did not preserve its challenge to Pharmacy II's failure to obtain a partnership finding because JP Morgan did not object to the jury charge on capacity grounds or request that the trial court submit a question, definition, or instruction to the jury concerning Pharmacy II's status as a partnership. JP Morgan argues that not only did it object at the charge conference, it preserved error by filing special exceptions and a motion to dismiss Pharmacy II's declaratory judgment claim, by moving for a directed verdict on Pharmacy II's declaratory judgment claim, and by submitting a proposed jury instruction on the partnership factors. Thus, we must determine whether any of these steps by JP Morgan were sufficient to preserve its complaint on appeal.

15

A challenge to a party's capacity is waived if not properly challenged in the trial court through a verified pleading. *See* Tex. R. Civ. P. 93(1), (2); *Austin Nursing Ctr.*, 171 S.W.3d at 849 ("[A] challenge to a party's capacity must be raised by a verified pleading in the trial court."). After a defendant challenging a plaintiff's capacity files a verified denial,

> [t]he issue of the plaintiff's capacity to sue is controverted, and the plaintiff bears the burden of proving at trial that he is entitled to recover in the capacity in which he has filed suit. As the party with the burden of proof then, it is incumbent upon the plaintiff to obtain a jury finding on this particular issue.
>
> If, however, the trial court submits a question assuming the capacity originally pleaded . . . and the defendant does not object to the question, then the defendant is bound by that charge on appeal. Conversely, if the defendant does object, then the defendant will either obtain the sought-after jury finding or have an adverse ruling which can be reviewed on appeal.

*Bossier Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W.3d 787, 798 (Tex. App.—Waco 2006) (citations omitted), *rev'd in part on other grounds*, 238 S.W.3d 376 (Tex. 2007).

Pharmacy II alleged that it was a partnership and sought a declaratory judgment that it was a general partnership. JP Morgan's verified pleading properly controverted the issue of whether Pharmacy II was a partnership and whether it was entitled to recover in that capacity. *See* Tex. R. Civ. P. 93(1), (2), (5); *Austin Nursing Ctr.*, 171 S.W.3d at 849. Therefore, JP Morgan argues, Pharmacy II was required to prove and obtain a jury finding that it was a

partnership.[6]

In *Damian*, Bell Helicopter contended that the representatives of the estate of one of the plaintiffs lacked capacity to bring a survival claim on behalf of the estate and argued that it preserved its complaint for appellate review through a motion for judgment notwithstanding the verdict. 352 S.W.3d at 140. This court stated that by not objecting to the absence of any questions, definitions, or instructions on the issue of capacity when the jury charge included questions that assumed the capacity of the representative of the estate, Bell Helicopter "deprived the trial court of an opportunity to correct the alleged error relating to capacity." *Id.* at 142. "Had Bell [Helicopter] objected to the charge on capacity grounds, the trial court might have chosen to submit a question, definition, or instruction to the jury concerning capacity, thus permitting the jury to perform its fact-finding role on the controverted issue of capacity." *Id.* (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex. 1989) ("By failing to object . . . parties . . . effectively deny a trial court the opportunity to review and correct a prior finding.")). Thus, we held that Bell Helicopter did not preserve for appellate review its challenge to the estate representative's capacity to represent the estate. *Id.*

The charge in this case contained questions that assumed Pharmacy II's

---

[6]Although not addressed by either party, rule of civil procedure 28 permits a partnership doing business under an assumed name to file suit in its partnership or assumed name. Tex. R. Civ. P. 28.

17

capacity as a partnership, but it did not contain a question, definition, or instruction concerning Pharmacy II's capacity. Jury question number one asked, "Did [Pharmacy II] and [WaMu] agree to a partnership account for the account ending in number 3775 on January 14, 2003?" JP Morgan objected to this question at the charge conference, stating, "Your Honor . . . objection to Question No. 1 would be confusing to the jury as to – as to submitting a question regarding [Pharmacy II] without any instructions as to [Pharmacy II] even being a partnership." JP Morgan argues that its objection to jury question number one, which the trial court overruled, preserved its complaint on appeal.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Additionally, the complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). An appellate court cannot reverse based on a complaint not raised in the trial court. *Id.* When objecting to a jury charge, the complaining party must object and "must point out distinctly the objectionable matter and the grounds of the objection." *See* Tex. R. Civ. P. 274. The "purpose of rule 274 is to afford trial courts an opportunity to correct errors in the charge by

18

requiring objections both to clearly designate the error and to explain the grounds for complaint." *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987).

Although JP Morgan objected to jury question number one, its complaint was that the question was confusing to the jury absent any instructions that Pharmacy II was a partnership. While this objection did identify the lack of an instruction related to Pharmacy II's status as a partnership, it was insufficient to apprise the trial court that JP Morgan was objecting to the lack of questions, definitions, or instructions on the issue of Pharmacy II's *capacity*. JP Morgan's complaint on appeal does not comport with the complaint it made in the trial court. Therefore, JP Morgan failed to preserve error. *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 274; *Banda*, 955 S.W.2d at 272. But even assuming that JP Morgan's objection did comport with its argument on appeal, JP Morgan did not reurge this objection in response to other questions in the charge that assumed Pharmacy II's capacity.[7] Thus, JP Morgan's objection was insufficient to preserve its complaint for our review. *See* Tex. R. Civ. P. 274 (providing that "[n]o objection to one part of the charge may be adopted and applied to any other part of the charge by reference only"); *Harris Cnty. v. Nagel*, 349 S.W.3d 769, 790 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (concluding that an objection to an instruction accompanying one question does not apply to

---

[7]In jury question numbers nine and ten, the trial court asked the jury to determine liability and proportionate responsibility for Pharmacy II, Ashu, Bisong, and Jama. *See* Tex. Bus. Org. Code Ann. § 152.056 (West 2012) ("A partnership is an entity distinct from its partners.").

instruction accompanying another question and declining "to hold that silence suffices where an overt reference would not" under rule 274), *cert. denied*, 134 S. Ct. 117 (2003).

JP Morgan also contends that it preserved error by submitting a proposed jury instruction on the partnership factors. Rule 276 provides in part, "When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon 'Refused,' and sign the same officially." Tex. R. Civ. P. 276. JP Morgan's proposed charge does not contain any such endorsement. An endorsement is not the only means of obtaining a ruling, but if there is no endorsement, the record must establish that the trial court otherwise ruled on the request, expressly or implicitly, for potential error to be preserved. *See* Tex. R. App. P. 33.1(a); *Marshall v. Harris Cnty. Mun. Util. Dist. No. 358*, No. 01-07-00910-CV, 2011 WL 286167, at *11–12 (Tex. App.—Houston [1st Dist.] Jan. 20, 2011, pet. denied) (mem. op.) (holding that although appellant filed a proposed jury charge, appellant did not preserve error because trial court did not endorse proposed charge, and appellant did not call trial court's attention to the portions of the proposed charge that were complained about on appeal); *Coates v. Coates*, No. 05-08-00440-CV, 2009 WL 679592, at *2 (Tex. App.—Dallas Mar. 17, 2009, pet. denied) (mem. op.) ("Appellants do not refer us to any place in the record where they drew the court's attention to their pretrial jury charge in any way, so the filing of that document preserved no error."); *Munoz v. Berne Grp.,*

20

*Inc.*, 919 S.W.2d 470, 472 (Tex. App.—San Antonio 1996, no writ) ("Tendering this instruction to the court in the form of an entire proposed charge, with nothing more, was insufficient to preserve error.").

JP Morgan has not established that it called the trial court's attention to its proposed instruction on the partnership factors. Even though this proposed instruction was filed with the trial court ten days before trial, JP Morgan did not bring the requested instruction to the trial court's attention during the charge conference and did not object to its omission from the charge. Also, there is no indication in the record that the trial court noticed or considered JP Morgan's proposed charge. Therefore, we conclude JP Morgan did not preserve its capacity complaint by filing a proposed instruction on the partnership factors. *See Marshall*, 2011 WL 286167, at *11–12; *Coates*, 2009 WL 679592, at *2; *Munoz*, 919 S.W.2d at 472.

JP Morgan further contends that it preserved error by filing special exceptions and a motion to dismiss Pharmacy II's declaratory judgment claims in which JP Morgan argued that (1) declaratory relief was not available to settle Pharmacy II's status as a partnership because Pharmacy II was required to prove its status as a partnership as part of its claims for affirmative relief that were already pending before the court; (2) a declaration regarding Pharmacy II's status as a partnership could not be resolved by a declaratory judgment action; and (3) Pharmacy II was not entitled to declaratory relief because it had not named as parties all persons or entities that had a claim or interest that would

21

have been affected by the declaration. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a) (limiting subject matter of relief available in a declaratory judgment action), 37.006(a) (West 2008) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."); *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding) (reciting the general rule that declaratory relief is not available to settle a dispute that is currently pending before a court). By its special exceptions and motion to dismiss, JP Morgan did not raise the issue of Pharmacy II's lack of capacity as a partnership. Assuming without deciding that JP Morgan could preserve error through its special exceptions and motion to dismiss, JP Morgan has waived its complaint on appeal because it differs from the complaint presented to the trial court in its special exceptions and motion to dismiss. *See* Tex. R. App. P. 33.1(a); *Banda*, 955 S.W.2d at 272.

Next, JP Morgan argues that it preserved error through its motion for directed verdict on Pharmacy II's declaratory judgment claim.[8] JP Morgan sought a directed verdict on Pharmacy II's declaratory judgment action on the grounds that declaratory relief was not available to settle Pharmacy II's status as a partnership because Pharmacy II was required to prove that it was a partnership as part of its claims for affirmative relief that were already pending before the court. *See, e.g.*, *BHP Petroleum*, 800 S.W.2d at 841. Again, this was

---

[8]Pharmacy II later nonsuited its declaratory judgment claims.

22

insufficient to preserve error because JP Morgan did not raise the issue of Pharmacy II's lack of capacity. Because JP Morgan's complaint on appeal differs from the complaint presented to the trial court in JP Morgan's motion for directed verdict, it is waived. *See* Tex. R. App. P. 33.1(a); *Banda*, 955 S.W.2d at 272.

We conclude and hold that JP Morgan did not preserve its challenge to Pharmacy II's failure to obtain a partnership finding. Accordingly, we overrule this portion of JP Morgan's first issue.

### 2. Judicial Estoppel

In the remaining portion of its first issue, JP Morgan argues that the positions taken by Ashu, Bisong, and Jama in other lawsuits are contrary to Pharmacy II's allegation in this lawsuit that it is a general partnership. Thus, JP Morgan argues, Pharmacy II is judicially estopped from claiming it is a general partnership.

Judicial estoppel precludes a party who successfully maintained a position in one proceeding from later adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008), *cert. denied*, 555 U.S. 1137 (2009)). A party cannot be judicially estopped if it did not prevail in the prior action. *Id.* (citing *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956)). The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own

23

benefit. *Id.* (citing *Pleasant Glade Assembly of God*, 264 S.W.3d at 7). Judicial estoppel requires that (1) a sworn, inconsistent statement was made in a prior judicial proceeding; (2) the party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528–29 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

JP Morgan points to actions taken by the partners in two other proceedings as inconsistent with Pharmacy II's contention in this case that it is a general partnership. First, in 2004, Belco Drug Corp. brought a suit on a sworn account against "Pamela Ashu d/b/a Professional Pharmacy II" and "Tusmo Jama d/b/a Professional Pharmacy II," which resulted in an agreed judgment in favor of Belco Drug Corp. against "Pamela Ashu d/b/a Professional Pharmacy II" and "Tusmo Jama d/b/a Professional Pharmacy II." JP Morgan claims Ashu and Jama failed to file a verified denial alleging that they were not liable in the capacity in which they were sued or that they were not individually liable because Pharmacy II was a partnership. Second, shortly before the trial in this case, Jama filed suit against Bisong, alleging that she and Bisong are owners of several pharmacies and "were partners in a general partnership which owned two more pharmacies, known as [Pharmacy Plus] . . . and Professional Pharmacy Plus II" which "make up the entirety of the business interests shared

24

between [them]."[9]  Pharmacy II is not among the business interests listed by Jama in her petition.

JP Morgan does not point to any sworn, inconsistent statements made by Pharmacy II in either proceeding, and to the extent the positions taken by Ashu and Jama in their pleadings in these prior lawsuits can be attributed to Pharmacy II, their positions appear to be no more than inadvertent omissions or inconsistencies.  *See Ferguson*, 295 S.W.3d at 643.  Moreover, Pharmacy II did not prevail in either lawsuit.  *Id.*  Therefore, we conclude that the doctrine of judicial estoppel does not bar Pharmacy II from asserting that it is a partnership in this case.  Accordingly, we overrule the remainder of JP Morgan's first issue.

## C. Limitations

In its tenth issue, JP Morgan argues that Pharmacy II's negligence claim is barred by limitations.  JP Morgan contends that Pharmacy II's negligence claim accrued when the 3775 Account was opened in January 2003 and that because Pharmacy II did not file suit against WaMu until July 2008, the claim was barred by limitations.  JP Morgan also argues that the evidence was legally and factually insufficient to support the jury's finding that Pharmacy II should, in the exercise of reasonable diligence, have discovered WaMu's negligence in January 2008.

A two-year statute of limitations applies to a cause of action for negligence.  *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (West Supp. 2014); *Dunmore v.*

---

[9]It is not clear from the record whether "Professional Pharmacy Plus II" was an error in Jama's pleading or is a separate entity from Pharmacy II.

*Chicago Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.) (applying two-year statute of limitations from section 16.003(a) to negligence claim). The statute of limitations begins to run when a cause of action accrues. *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 279 (Tex. App.—Dallas 2003, no pet.) The date of accrual is a question of law. *Id.* When the elements of duty, breach, and resulting injury are present, a negligence action accrues and the statute of limitations begins to run. *Id.* at 280; *see also Black v. Wills*, 758 S.W.2d 809, 816 (Tex. App.—Dallas 1988, no pet.) ("Under the 'legal injury' rule, a cause of action sounding in tort generally accrues when the tort is completed, that is, the act is committed and damage suffered. This is the date of legal injury and the statute of limitations begins to run at that time." (citation omitted)). While a cause of action in tort generally accrues when the tort is committed, "[a] legal injury must be sustained, of course, before a cause of action arises." *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967); *see Deloitte & Touche v. Weller*, 976 S.W.2d 212, 215 (Tex. App.—Amarillo 1998, pet. denied) ("Because actual injury is an element of a negligence claim, '[a]n action for negligence cannot be maintained unless some damages result therefrom.'" (quoting *Johnson v. Sovereign Camp, W.O.W.*, 125 Tex. 329, 335, 83 S.W.2d 605, 608 (1935), *overruled on other grounds*, *Doctors Hosp. Facilities v. Fifth Court of Appeals*, 750 S.W.2d 177 (Tex. 1988))), *cert. denied*, 526 U.S. 117 (1999).

Here, Pharmacy II was not injured, and its claims did not accrue, until at the earliest, WaMu froze the 3775 Account in December 2007, or at the latest, WaMu withdrew $116,683 from the 3775 Account and paid $116,183 to Cambridge in satisfaction of the agreed judgment in February 2008. Because Pharmacy II first asserted its negligence claim in an amended pleading filed in July 2009, we hold that Pharmacy II's negligence claim was not barred by limitations. Therefore, it is unnecessary for us to address the remaining portions of JP Morgan's tenth issue. *See* Tex. R. App. P. 47.1. Accordingly, we overrule JP Morgan's tenth issue.

## D. Res Judicata and Collateral Estoppel

In its eleventh issue, JP Morgan claims that the doctrines of res judicata and collateral estoppel bar Pharmacy II's negligence claims because they were or might have been litigated in the garnishment action. Res judicata and collateral estoppel are affirmative defenses; thus, the party asserting them has the burden of pleading and proving the elements of the defense. *Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). JP Morgan argues that it conclusively established these defenses as a matter of law. Because JP Morgan moved for directed verdict on both defenses, we interpret this issue as a complaint that the trial court erred in denying JP Morgan's motion for directed verdict.

### 1. Standard of Review

A directed verdict is proper only under limited circumstances: (1) when the evidence is insufficient to raise a material fact issue, or (2) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). An appeal from the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Solares v. Solares*, 232 S.W.3d 873, 878–79 (Tex. App.—Dallas 2007, no pet.). A legal sufficiency challenge on an issue on which an appellant bears the burden of proof requires that the appellant demonstrate the evidence conclusively established all vital facts to support the issue. *Id.* at 878–79. Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005).

### 2. Garnishment Proceedings

Garnishment is a statutory proceeding whereby the property or money of a debtor in the possession of another is applied to the payment of a debt that arises from a final judgment against the debtor. *See Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 63.001–.008 (West 2008); Tex. R. Civ. P. 657–679. "Funds placed with a bank ordinarily become general deposits which create a

debtor-creditor relationship between the bank and its depositor." *Bank One*, 824 S.W.2d at 558. The only real issue in a garnishment action is whether the garnishee was indebted to the defendant in the main suit or had in its possession effects belonging to the defendant at the time of the service of the writ and the filing of the answer. *DeMello v. NBC Bank-Perrin Beitel*, 762 S.W.2d 379, 381 (Tex. App.—San Antonio 1988, no writ). A garnishee bank is not indebted to a judgment debtor unless some form of deposit agreement creates a debtor-creditor relationship between the bank and the judgment debtor. *Bank One*, 824 S.W.2d at 558. A bank served with a writ of garnishment may rely on its deposit agreements when determining to whom it is indebted. *Id.* at 557.

### 3. Res Judicata

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). To prevail on a res judicata defense, a party must show that (1) in a previous action, a court of competent jurisdiction rendered a final determination on the merits of a claim; (2) the parties in the earlier action are identical to, or in privity with, the present parties; and (3) the pending claim (a) is identical to the prior claim or (b) arises out of the same subject matter as the prior claim and could have been litigated in the previous action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). For res judicata to apply to a claim, that claim

29

must have been in existence when the first suit was filed. *In re D.W.G.*, 391 S.W.3d 154, 167 (Tex. App.—San Antonio 2012, no pet.); *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Pharmacy II was not a party to the garnishment judgment, and it did not attempt to intervene in the garnishment action until after the judgment was entered. Generally, a person is not bound by a judgment to which he was not a party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a). However, res judicata applies when a party in the second action is in privity with a party to the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652–53 (Tex. 1996). No prevailing definition of privity exists that automatically applies to all cases involving res judicata, and the determination of who are privies requires careful examination of the circumstances of each case. *Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 27 (Tex. App.—Houston [14th Dist.] 1996, writ denied). A person may be in privity with a party in at least three ways: (1) he can control the action even though not a party to it; (2) his interests can be represented by a party; or (3) he can be a successor in interest, deriving his claim through a party to the prior action. *Amstadt*, 919 S.W.2d at 653.

Without elaboration, JP Morgan suggests that Pharmacy II was in privity with Bisong because Bisong was a partner in Pharmacy II and because Pharmacy II sought to intervene in the garnishment action. However, "[a] partnership is an entity distinct from its partners." Tex. Bus. Org. Code Ann.

30

§ 152.056. JP Morgan does not argue or point to any evidence establishing that Pharmacy II controlled the garnishment action, that Bisong represented Pharmacy II's interests in the garnishment action, or that Pharmacy II was Bisong's successor in interest. Moreover, as discussed above, Pharmacy II's negligence claim did not arise until, at the earliest, WaMu froze the 3775 Account in December 2007, or at the latest, WaMu withdrew $116,683 from the 3775 Account and paid $116,183 to Cambridge in satisfaction of the agreed judgment in February 2008, both of which occurred after the garnishment action was filed. Therefore, we hold that JP Morgan failed to conclusively establish that Pharmacy II's negligence claim was barred by res judicata.

### 4. Collateral Estoppel

Collateral estoppel, or issue preclusion, bars the relitigation of identical issues of fact or law that were actually litigated and essential to the final judgment in a prior suit. *Barr*, 837 S.W.2d at 628. A party seeking to assert the bar of collateral estoppel must establish three elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). The facts related to WaMu's negligence in setting up the 3775 Account and withdrawing funds from the account were not fully and fairly litigated in the garnishment action nor were WaMu and Pharmacy II cast as adversaries in the garnishment action. Thus, we conclude that JP

31

Morgan failed to conclusively establish that Pharmacy II's negligence claim was barred by collateral estoppel.

Accordingly, we overrule JP Morgan's eleventh issue.

## E. Duty

In its third issue, JP Morgan argues that because Pharmacy II was not a customer of WaMu or an entity with whom WaMu had a prior relationship, WaMu owed no duty to Pharmacy II in the opening of the 3775 Account. JP Morgan further argues that because Pharmacy II was not an account holder of or party to the 3775 Account, JP Morgan owed no duty to Pharmacy II regarding the payment of funds out of the 3775 Account in the garnishment action. JP Morgan also argues that it owed no tort duty to Pharmacy II because Pharmacy II asserted no independent duty owed to it by WaMu other than those arising under the contractual relationship Pharmacy II alleged was created by the Master Account Agreement.

Duty is the threshold inquiry in a negligence case, and the existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). To maintain a negligence cause of action, a plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort. *Id.* To determine whether a duty exists, we consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the

32

magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants. *Id.* Of these factors, foreseeability is "'the foremost and dominant consideration.'" *Id.* (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his negligence creates. *Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002). Foreseeability does not require an actor to anticipate the precise manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Courts also consider the risk of injury compared to the burden on the defendant, the social utility of the conduct involved, the nature of the relationship between the plaintiff and defendant, whether one party has superior knowledge of the risk, and the defendant's right to control the actor whose conduct precipitated the harm. *New Tex. Auto Auction Servs., L.P. v. Gomez de Hernandez*, 249 S.W.3d 400, 406 (Tex. 2008); *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 292 (Tex. 1996).

### 1. Opening the 3775 Account and Responding to the Writ of Garnishment

Generally, a bank owes no duty to a person who is not a customer and with whom the bank does not have a relationship. *See, e.g.*, *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.); *Guerra v.*

33

*Regions Bank*, 188 S.W.3d 744, 747 (Tex. App.—Tyler 2006, no pet.). And when responding to a writ of garnishment, a bank may rely on its deposit agreement when determining to whom it is indebted. *Bank One*, 824 S.W.2d at 557. Relying on these principles, JP Morgan argues it owed no duty to Pharmacy II.

In *Guerra*, the first case relied upon by JP Morgan, Pedro Guerra brought suit against Regions Bank for negligence, claiming that a bank customer used his name to open a joint checking account at Regions Bank under the customer's name and Guerra's name without Guerra's permission. 188 S.W.3d at 745–46. The customer used a check from the IRS payable to "Pedro Guerra" to open the account and listed Guerra's address as an apartment in Longview, Texas. *Id.* at 745. Guerra had never had an account with Regions Bank nor had he ever been to Longview. *Id.* at 746. Numerous checks drawn on the account were returned for insufficient funds, and eight Longview merchants filed worthless check information sheets with the Gregg County District Attorney in Longview. *Id.* at 745–46. The Gregg County District Attorney's Office issued a warrant for Guerra. *Id.* at 746. Guerra was arrested in Bellaire, Texas, and spent three weeks in jail. *Id.*

The trial court granted a summary judgment against Guerra on the basis that Regions Bank owed no duty to him. *Id.* The appellate court affirmed the trial court's judgment, concluding that Regions Bank owed no duty to Guerra because he was not a Regions Bank customer and had no other relationship with Regions

34

Bank. *Id.* at 747 (citing *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 664 (Tex. App—Dallas 1996, no writ)). Guerra argued that Regions Bank owed him a duty based on the Alabama Supreme Court's decision in *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996). *Guerra*, 188 S.W.3d at 747. In *Patrick,* the court found the "bank thought it had a relationship" with the plaintiff when an account was opened by an imposter using the plaintiff's social security number and temporary driver's license as identification and, therefore, a duty may be imposed. 681 So.2d at 1369. Based upon the definition of foreseeability in Texas, the *Guerra* court declined to follow *Patrick* because "[i]n opening the joint account [with an IRS check as identification], the bank could not have believed that it was establishing a relationship with [the plaintiff] because, unlike the imposter in *Patrick,* [the wrongdoer] did not use [the plaintiff's] name, social security number, and driver's license number to open the account." *Guerra*, 188 S.W.3d at 748; *see also Sw. Key Program*, 81 S.W.3d at 274 (discussing the test for foreseeability in Texas); *Lee Lewis Constr.*, 70 S.W.3d at 785 (same). The court also stated that "[i]t was not reasonable to expect Regions [Bank] to foresee that an individual with the same first and last name living over 200 miles away would be affected by the opening of this checking account." *Guerra*, 188 S.W.3d at 748.

In *Owens*, the second case relied on by JP Morgan, the plaintiffs brought suit against Comerica Bank for negligence, alleging that it negligently opened and maintained bank accounts for Charles Dwain Davis, Jr. into which Davis

35

fraudulently deposited approximately $1.9 million of the plaintiffs' money. *Owens*, 229 S.W.3d at 546. The plaintiffs intended the money to be used for investments and loan repayments, but Davis misappropriated the funds for his own use. *Id.* Comerica Bank filed a motion for summary judgment contending it owed no duty to the plaintiffs as a matter of law because the plaintiffs were not Comerica Bank customers. *Id.*

As in *Guerra*, the plaintiffs were not bank customers, and there was no evidence that the plaintiffs had individual relationships with the bank. *Id.* at 547. The plaintiffs argued that Comerica Bank owed it a duty of care because it was foreseeable that Davis would use his accounts to perpetuate fraud. *Id.* The court conceded that it was possible that any bank account could be used for a wrongful purpose, but there was nothing in the facts of the case that would lead Comerica Bank to anticipate a danger of injury to another when it opened and maintained the two accounts for Davis. *Id.* Because there was no foreseeable danger, the court concluded that Comerica Bank owed no duty to the plaintiffs as a matter of law. *Id.*

*Owens* and *Guerra* are distinguishable from the facts giving rise to this case, and therefore, we find them unpersuasive. In both cases, the plaintiffs were not bank customers and had no other relationship with the bank. Here, Pharmacy II was a customer of and had a relationship with WaMu. Pharmacy II, acting by and through Ashu and Bisong, went to a WaMu branch to set up a bank account for Pharmacy II similar to Pharmacy Plus's account, which was a

partnership account. *See* Tex. Bus. Org. Code Ann. § 152.301 (West 2012) ("Each partner is an agent of the partnership for the purpose of its business."); *see also Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 209 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A corporation or other legal entity can conduct business only through natural persons."). Ashu and Bisong informed WaMu of their intent to open a partnership account for Pharmacy II and provided WaMu with documents indicating Pharmacy II's existence. WaMu listed the account title for the 3775 Account as "Professional Pharmacy II" on the Master Account Agreement, Pharmacy II's checks, and bank statements and listed Pharmacy II's EIN number as the tax ID for the account. WaMu also stated in its verified answer to the writ of garnishment that the 3775 Account was owned in the name of Pharmacy II. Based on these facts, we conclude that Pharmacy II had a sufficient relationship with WaMu that gave rise to a legal duty.

Moreover, the nature of the relationship between Pharmacy II and WaMu was such that WaMu was in a better position to guard against the injury that occurred. WaMu controlled the manner in which the account was opened, and it knew that Pharmacy II was a partnership from the outset based upon the documents provided by Ashu and Bisong. Moller recognized that Pharmacy II was a partnership when she decided that she could not open the account as a partnership account without a partnership agreement, even though Ashu and Bisong provided to WaMu documentation indicating Pharmacy II's status as a partnership. Farnsworth testified that when responding to a writ of garnishment,

37

WaMu would look at the terms of the Master Account Agreement for an account to ensure that the debtor named in the writ was the owner of that account. Given WaMu's reliance on the terms of the Master Account Agreement when responding to a writ of garnishment, WaMu could have reasonably anticipated that setting up an account incorrectly could result in wrongful garnishment. *See Bank One,* 824 S.W.2d at 558 (holding that a bank is entitled to rely on its deposit agreement when responding to a writ of garnishment.)

WaMu also had a duty to disclose any defense to the writ of garnishment of which it was aware. *See Sw. Bank & Trust Co. v. Calmark Asset Mgmt., Inc.*, 694 S.W.2d 199, 200–01 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). During the garnishment proceeding, an assistant financial center manager at WaMu stated in a letter—which Bisong's counsel provided to Cambridge's counsel in an attempt to settle the garnishment action—that the 3775 Account was a business account. Even though WaMu stated in its verified answer filed in the garnishment action that the 3775 Account was owned in the name of Pharmacy II, it did not allege that Bisong did not own the funds in the 3775 Account. *See* Tex. Bus. Org. Code Ann. § 152.101 ("Partnership property is not property of the partners."); *cf. Gottesman v. Toubin*, 353 S.W.2d 294, 299 (Tex. Civ. App.—Houston 1962, no writ) (stating that "the general rule [is] that a partnership fund is not subject to garnishment for the individual debt of the firm").

JP Morgan also argues there is "no compelling public policy reason to create a duty between banks and non-account holders" and "the social utility of

[a] bank's conduct in having and relying upon written account agreements is unquestionable and enormous." JP Morgan further opines that "the consequences of disregarding . . . valid account agreements [are] severe—every bank can be subjected to liability suits by third parties for any and every valid transaction in any bank account." But Pharmacy II was WaMu's customer; Ashu and Bisong were acting as Pharmacy II's agents in opening its business account, which should have been opened as a partnership account. WaMu titled the account in Pharmacy II's name, and it recognized that the 3775 Account was a business account after it was served with the writ of garnishment. We emphasize that we are not creating a general duty between a bank and a non-account holder. However, we conclude under the unique facts presented in this case, WaMu owed a duty to Pharmacy II.

## 2. Sufficiency of Pharmacy II's Negligence Pleadings

As part of its third issue, JP Morgan claims that Pharmacy II did not plead that WaMu was negligent in opening the account. JP Morgan asserts that Pharmacy II only pled that WaMu negligently agreed and improperly transferred funds from the 3775 Account to Cambridge. Therefore, JP Morgan argues that the negligence issue was improperly submitted to the jury and the judgment was not supported by the pleadings.

We review claimed error in the court's charge under an abuse of discretion standard. *Crowson v. Bowen*, 320 S.W.3d 486, 488 (Tex. App.—Fort Worth 2010, no pet.) (citing *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). A trial court

abuses its discretion when it submits a jury question that is neither supported by the pleadings nor tried by consent. *Id.* (citing *Stephanz v. Laird*, 846 S.W.2d 895, 902 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Jury questions must be supported by the pleadings. *Gibbins v. Berlin*, 162 S.W.3d 335, 341 (Tex. App.— Fort Worth 2005, no pet.); *McReynolds v. First Office Mgmt.*, 948 S.W.2d 342, 345 (Tex. App.—Dallas 1997, no writ); s*ee also* Tex. R. Civ. P. 278 ("The court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). Although issues may be tried by consent, "written pleadings, before the time of submission, shall be necessary to the submission of questions." Tex. R. Civ. P. 67; *Gibbins*, 162 S.W.3d at 342. Similarly, a trial court's judgment must conform to the pleadings. *See* Tex. R. Civ. P. 301. A trial court may not enter judgment on a claim that was not sufficiently pled or otherwise tried by consent. *See* Tex. R. Civ. P. 67, 301; *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979); *Maswoswe v. Nelson*, 327 S.W.3d 889, 894 (Tex. App.—Beaumont 2010, no pet.).

"Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Id.* at 897. The purpose of this rule is to give the opposing party sufficient information to enable that party to prepare a

40

defense. *Id.* "Generally, a pleading provides fair notice of a claim when an opposing attorney of reasonable competence can examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony." *Taylor v. Taylor*, 337 S.W.3d 398, 401 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g) (citing *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896).

Because JP Morgan's special exceptions did not challenge Pharmacy II's negligence claim, we construe Pharmacy II's pleadings liberally in its favor. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897 (stating that a court should liberally construe a petition in favor of the pleader if no special exceptions are filed). Pharmacy II pled its negligence claim broadly, alleging that WaMu owed Pharmacy II a duty to exercise reasonable care to avoid a foreseeable risk of harm to Pharmacy II, WaMu breached its duty to Pharmacy II by not exercising ordinary care, WaMu's breach of the duty owed to Pharmacy II was the proximate cause of the damages sustained by Pharmacy II, the damages resulting from WaMu's conduct or omissions were foreseeable, and Pharmacy II incurred actual damages as a result of WaMu's negligence. Pharmacy II also incorporated its factual allegations into its negligence claim. Pharmacy II alleged, among other things, that it opened the 3775 Account as a business account using its assumed name certificate and EIN; Pharmacy II used the 3775 Account as its operating account; all funds deposited into the 3775 Account were acquired in the name of Pharmacy II in the regular course of business and were partnership property; WaMu represented to Pharmacy II that the 3775 Account

41

was Pharmacy II's business account; at no time prior to WaMu's answer in the garnishment action did WaMu represent to Pharmacy II that the 3775 Account was a sole proprietorship or joint sole proprietorship account held in Bisong's name; and as a result of WaMu's negligence, funds were taken from the 3775 Account to satisfy the agreed judgment in the garnishment action.

We conclude that Pharmacy II's pleadings, as a whole, can be fairly read to allege that WaMu was negligent in opening the 3775 Account, as well as in withdrawing the funds from the account. Accordingly, Pharmacy II's negligence claim was properly submitted to the jury and the judgment was supported by the pleadings.

### 3. No tort duty

JP Morgan also asserts that Pharmacy II cannot maintain its negligence cause of action because it only pled a breach of a duty alleged to have been created by the Master Account Agreement. "As a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract." *Carson Energy, Inc. v. Riverway Bank*, 100 S.W.3d 591, 601 (Tex. App.—Texarkana 2003, pet. denied) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.)). If the only duty between parties arises from a contract, a breach of this duty ordinarily sounds only in contract, not in tort. *DeLanney*, 809 S.W.2d at 494.

JP Morgan argues that because Pharmacy II has failed to plead a violation of a duty imposed by law independent of the Master Account Agreement, Pharmacy II's claim sounds in contract, not tort. As we determined above, Pharmacy II pled that WaMu was negligent in opening the 3775 Account and that WaMu owed Pharmacy II a duty when opening the account and responding to the writ of garnishment. Accordingly, we overrule JP Morgan's third issue. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."); *cf. Sw. Bank & Trust Co.*, 694 S.W.2d at 200–01 (stating that a garnishee has a duty to disclose any defense to writ of garnishment of which the garnishee is aware).

## F. Immaterial Question

In its fourth issue, JP Morgan asserts that the trial court should have disregarded the jury's answer to the negligence question as immaterial. A jury question is immaterial when it should not have been submitted or when it was properly submitted but was rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

JP Morgan does not argue in its fourth issue that the negligence question should not have been submitted. It only complains that the negligence question was rendered immaterial by the jury's answer of "no" to jury question number one. Without a contractual relationship between WaMu and Pharmacy II, JP

43

Morgan argues that WaMu owed no duty to Pharmacy II regarding the payment of funds out of the 3775 Account. Because we have determined that WaMu owed Pharmacy II a legal duty independent of whether WaMu and Pharmacy II agreed to a partnership account, jury question number nine was not rendered immaterial by the jury's answer to jury question number one. Accordingly, we overrule JP Morgan's fourth issue.

## G. The Economic Loss Rule

In its fifth issue, JP Morgan asserts that the economic loss rule precludes Pharmacy II from recovering damages under its negligence claim. JP Morgan claims there is no negligence cause of action available to Pharmacy II because Pharmacy II's loss, if any, is a purely economic loss that is the subject of the Master Account Agreement. Therefore, JP Morgan argues, any tort claim arising from the opening of the 3775 Account or paying money out of the 3775 Account is barred by the economic loss rule.

We disagree. The Texas Supreme Court has rejected a formulation of the economic loss rule that "says you can never recover economic damages for a tort claim." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011). In determining whether the plaintiff may recover on a tort theory, it is instructive to examine the nature of the plaintiff's loss. *DeLanney*, 809 S.W.2d at 494. When the only loss or damage is to the subject matter of the contract, the plaintiff's claim will only sound in contract. *Id.* In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated

44

with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."). In other words, the economic loss rule precludes recovery of economic losses in negligence when the loss is the subject matter of a contract between the parties. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Here, there was no finding that there was a contract between Pharmacy II and WaMu. The economic loss rule normally applies between parties to a contract, but it does not apply to strangers to the contract. *See Sharyland Water Supply Corp.*, 354 S.W.3d at 418 ("[W]e have never held that [the economic loss rule] precludes recovery completely between contractual strangers in a case not involving a defective product—as the court of appeals did here."). Thus, the economic loss rule as asserted by JP Morgan does not bar Pharmacy II's negligence claim. *See id.* at 419 ("The economic loss rule does not swallow all claims between contractual and commercial strangers."); *cf. Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 316 (Tex. App.—Dallas 2013, no pet.) (holding that the economic loss rule did not bar bank's claim against mortgagor's attorney for negligent misrepresentation where there was no contract between the bank and the attorney); *Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 378 (Tex. App.—Fort Worth 2012, pet. denied) (holding economic loss rule did not

bar recovery of tort damages on statutory fraud claim based upon fraudulent inducement). Therefore, we overrule JP Morgan's fifth issue.

## H. Sufficiency of the Evidence

In its sixth, seventh, eighth, and ninth issues, JP Morgan argues the evidence is legally and factually insufficient to support the jury's negligence findings.

### 1. Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller*, 168 S.W.3d at 807, 827.

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing

all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). An opinion reversing for factual insufficiency must detail the evidence relevant to the issue or point in consideration and clearly state why the finding is factually insufficient (in other words, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias). *Pool*, 715 S.W.2d at 635. When a party challenges the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must show that there is "insufficient evidence" supporting the finding; that is, that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of the credible evidence contrary to the finding. *See Garza*, 395 S.W.2d at 823; W. Wendall Hall, *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 41–42 (2010).

### 2. Breach

In its sixth issue, JP Morgan argues that the evidence is insufficient to support the jury's finding that WaMu breached a duty of ordinary care to Pharmacy II because Pharmacy II did not present expert testimony regarding the

applicable standard of care or the breach of such standard, and even if expert testimony is not required, the evidence was insufficient to establish a breach of ordinary care in connection with the opening of the 3775 Account and with the payment of funds from the 3775 Account.

To establish breach of duty, a plaintiff must show either that the defendant did something that an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care. *Lincoln Prop. Co. v. DeShazo*, 4 S.W.3d 55, 61 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). Whether a defendant breached a duty ordinarily presents a question of fact. *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied) (citing *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 933 (Tex. App.—San Antonio 1989, writ denied)).

### a. Need for Expert Testimony

JP Morgan contends that expert testimony was required to establish the standard of care and breach of such standard because the standard of care for a bank, including the standard of care in opening an account or responding to a writ of garnishment, is not within the experience of a layperson. Whether expert testimony is required is a question of law, which we review de novo. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). "Expert testimony is required when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006);

48

*see Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) ("Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman."). In determining whether expert testimony is required to establish negligence, we consider whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person. *FFE Transp. Servs.,* 154 S.W.3d at 91. In such a case, the expert testimony must establish both the standard of care and the violation of that standard. *Hager v. Romines*, 913 S.W.2d 733, 734–35 (Tex. App.—Fort Worth 1995, no writ).

Pharmacy II argues that expert testimony was not necessary because the jurors could have determined the appropriate standard of care owed by WaMu under these facts and the breach of that standard based on their common knowledge and experience. We agree. Pharmacy II's negligence cause of action is based on its claim that it provided to WaMu documentation establishing that it was a partnership and asked WaMu to set up the 3775 Account as a partnership account, but WaMu set up a joint sole proprietorship account, which resulted in WaMu paying sums out of the 3775 Account in response to the writ of garnishment. We conclude that WaMu's conduct at issue in this case does not involve the use of specialized equipment or techniques unfamiliar to the ordinary person. Pharmacy II was merely complaining that WaMu did not give them the type of account Pharmacy II requested and was supported by the documentation provided by Pharmacy II, which does not involve matters beyond jurors' common

49

understanding. Had WaMu set up the 3775 Account as a partnership account, Pharmacy II would have been listed as the owner of the account, not Ashu and Bisong, and WaMu would not have paid sums out of that account in the garnishment action. Thus, we conclude under the facts of this case, expert testimony was not necessary to establish the standard of care owed to Pharmacy II and WaMu's breach of such standard.

### b. Sufficiency of the Evidence

JP Morgan points to the testimony of Moller, the branch manager who opened the 3775 Account, and Farnsworth, the national production manager for the levy department at WaMu, as evidence establishing that WaMu did not breach its duty to Pharmacy II. Moller testified that a husband and wife could open a joint sole proprietorship account, which could be titled in an assumed name. She further testified that she followed WaMu's guidelines for opening a joint sole proprietorship account and that she prepared the Master Account Agreement and presented it to Ashu and Bisong for their review and signature. Farnsworth testified that upon receiving the writ of garnishment, he also followed WaMu's guidelines. Based upon his examination of the Master Account Agreement, he determined that Bisong was the owner of the 3775 Account, even though the name on the account was Pharmacy II. Thus, in its answer to the writ of garnishment, WaMu listed the 3775 Account as one the accounts owned by Bisong.

But "[a] Bank's internal policies do not determine a standard of care or duty." *Guerra*, 188 S.W.3d at 747 (citing *FFE Transp. Servs.*, 154 S.W.3d at 92). Ashu and Bisong each testified that they informed WaMu that Pharmacy II wanted to set up a partnership account similar to Pharmacy Plus's partnership account at WaMu. Ashu and Bisong further testified they provided to WaMu the assumed name certificate for Pharmacy II, which reflected that it was filed by Bisong, Ashu, and Jama; Pharmacy II's EIN; a completed Form W-9 stating that Pharmacy II was a partnership; and a partially completed Texas Medicaid Vendor Direct Deposit Authorization bearing Pharmacy II's EIN and identifying Pharmacy II as the payee.

WaMu's business account disclosures and regulations describe a sole proprietorship as "a business account opened by the owner(s) of a business which is not a corporation, association, limited liability company or *partnership*." [Emphasis added.] Moller testified that because the third person on the assumed name certificate was not present, she could not open the account as a partnership account without a written partnership agreement.[10] Thus, she was aware that Pharmacy II wanted to open the account as a partnership account, yet she opened the account as a joint sole proprietorship account. Moller admitted that under the account disclosures and regulations, a sole proprietorship account

---

[10]Texas law does not require that a partnership agreement be in writing. Tex. Bus. Org. Code Ann. § 151.001(5) (West 2012) ("'Partnership agreement' means any agreement, written or oral, of the partners concerning a partnership.").

51

could not be opened if the business was a partnership. Moreover, Karin Hart, an operations analyst with WaMu familiar with WaMu's policies and procedures in January 2003 for opening bank accounts, testified that in her ten years of experience with WaMu, she had never seen a sole proprietorship account set up based upon an assumed name certificate with three names on it.

WaMu also stated in its verified answer filed in the garnishment action that the 3775 Account was owned in the name of Pharmacy II, and an assistant financial center manager at WaMu stated in a letter that the 3775 Account was a business account. But WaMu failed to raise this defense in its garnishment answer and released funds belonging to the partnership in the account to Cambridge, as the judgment creditor of Bisong, not the partnership. *See Sw. Bank & Trust Co.*, 694 S.W.2d at 200–01 (holding garnishee bank liable for releasing funds when garnishee knew that funds in garnished account were held in trust for another and did not belong to debtor).

Thus, after applying the applicable standards of review, we conclude that the evidence was legally and factually sufficient to show WaMu breached a duty to Pharmacy II both in opening the account and responding to the writ of garnishment. Accordingly, we overrule JP Morgan's sixth issue.

### 3. Proximate Cause

JP Morgan asserts in its seventh issue that the evidence is legally and factually insufficient to support the jury's finding of proximate cause. Proximate cause requires foreseeability and cause in fact. *IHS Cedars Treatment Ctr. of*

*DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). To establish cause in fact, Pharmacy II must show that WaMu's negligence was a substantial factor in bringing about its injury and without which no harm would have occurred. *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221–23 (Tex. 2010). "The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his or her negligence creates." *Sw. Key Program*, 81 S.W.3d at 274.

First, JP Morgan argues that "it is not foreseeable that two alleged partners of a partnership will execute an account agreement and open a joint sole proprietorship account as owners, and then later claim through the partnership that they are not owners of the account." This argument misses the point of Pharmacy II's claim that WaMu incorrectly opened the 3775 Account as a joint sole proprietorship account instead of a partnership account. Farnsworth testified that WaMu relied on the Master Account Agreement when responding to the writ of garnishment. Therefore, Pharmacy II's injury—payment of partnership funds out of the 3775 Account in response to a writ of garnishment directed to Bisong—might have been reasonably anticipated by WaMu when it set up the 3775 Account up as a joint sole proprietorship account instead of a partnership account.

Next, JP Morgan argues that its payment of $116,683 out of the 3775 Account was not the proximate cause of Pharmacy II's injuries because Pharmacy II was not a party to the account. "The test for cause in fact, or 'but for

53

causation,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). Pharmacy II was not a party to the 3775 Account because WaMu set up the 3775 Account as a sole proprietorship account instead of a partnership account. Again, had WaMu not incorrectly set up the 3775 Account as a sole proprietorship account, funds from the account would not have been paid to Cambridge in the garnishment action against Bisong. Thus, WaMu's failure to set up the account properly was a substantial factor in causing Pharmacy II's injuries without which Pharmacy II's injuries would not have occurred.

After applying the appropriate standards of review, we conclude that the evidence was legally and factually sufficient to support the jury's finding that WaMu's negligence was a substantial factor in bringing about Pharmacy II's injuries and without which no harm would have occurred. Accordingly, we overrule JP Morgan's seventh issue.

### 4. Damages

In its eighth issue, JP Morgan attacks the jury's award of $180,683 in damages on Pharmacy II's negligence claim, arguing that the evidence was legally and factually insufficient to support the jury's finding. By its ninth issue, JP Morgan asks us in the alternative to vacate, modify, or reform the damages

54

awarded in the judgment from $153,580.55 to $99,180.55, or suggest a remittitur reducing the damages award by $54,400.

We will not disregard a jury's damage award merely because its reasoning in reaching its figures is unclear. *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 403 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A jury generally has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). It may not, however, "arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial." *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied).

The jury found that $180,683 in damages would "fairly and reasonably compensate" Pharmacy II for any damages that "resulted from the injury in question." It is undisputed that WaMu withdrew $116,683 from the 3775 Account pursuant to the agreed judgment in the garnishment action. Pharmacy II also presented evidence that it incurred between $63,000 and $64,000 in attorney's fees in connection with the case. Attorney's fees, however, are not recoverable as actual damages in a negligence action. *See Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 669 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.).

JP Morgan argues that Pharmacy II cannot claim damages for the $116,683 paid out of the 3775 Account because Pharmacy II was not the owner of the account. JP Morgan argues that even if Pharmacy II could claim the funds

55

withdrawn from the 3775 Account as damages, the evidence is factually insufficient to support the jury's finding of $180,683 in damages because only $116,683 was paid out of the 3775 Account. The Bank further argues that the jury's award is manifestly unjust and excessive.

JP Morgan points out that ordinarily, funds deposited with a bank become general deposits, which create a creditor-debtor relationship between the bank and the depositor. *Carson Energy*, 100 S.W.3d at 598. Title to the money passes to the bank, subject to the depositor's demand for payment. *Hodge v. N. Trust Bank of Tex., N.A.*, 54 S.W.3d 518, 522 (Tex. App.—Eastland 2001, pet. denied). A bank is not indebted to the depositor unless some form of deposit agreement creates a debtor-creditor relationship between the bank and the depositor, and a bank "may rely on its deposit agreements when determining to whom it is indebted." *Bank One*, 824 S.W.2d at 557, 558.

Based upon these principles, JP Morgan asserts that because the jury found that Pharmacy II did not have a partnership account with WaMu, Pharmacy II was not lawfully entitled to the money in the 3775 Account. JP Morgan further claims that "the evidence conclusively established that Fidelis Bisong and Pamela Ashu were the owners of the 3775 Account and therefore the only ones legally entitled to such monies in the 3775 Account." But the jury did not find that Ashu and Bisong had a joint sole proprietorship account at WaMu, and JP Morgan does not challenge this lack of a finding on appeal. Pharmacy II's claim is that WaMu incorrectly opened the 3775 Account as a joint sole proprietorship

56

account instead of a partnership account. And as a result of WaMu's failure to open the account as instructed, $116,683 was improperly withdrawn from the 3775 Account.

Property acquired in the name of the partnership is partnership property. Tex. Bus. Org. Code Ann. § 152.102(a)(1). Bisong testified that the 3775 Account was used as the operating account for Pharmacy II's business and that the funds Pharmacy II received from Medicaid were directly deposited into the 3775 Account. Ashu testified that Medicaid payments, payments from insurance companies, and retail revenue were deposited into the 3775 Account. Pharmacy II used the funds in the 3775 Account for payroll, lease payments, and other business expenses, such as the purchase of pharmaceuticals. This evidence was sufficient to establish that the funds in the 3775 Account belonged to Pharmacy II, not the partners. *See id.* § 152.101 ("Partnership property is not property of the partners."). Accordingly, we conclude that there was some evidence that Pharmacy II suffered $116,683 in damages.

Pharmacy II argues on appeal that it in addition to the $116,683 withdrawn from the 3775 Account, it suffered further damages as a result of the disruption of its business caused by the freezing of the 3775 Account and the removal of the funds from the account. In support of this contention, Pharmacy II points to Bisong's testimony that the amount withdrawn from the 3775 Account amounted to "between four to five weeks to two months" of revenue, which would have

57

been used to purchase inventory and pay salaries and bills. Pharmacy II also directs us to the following testimony elicited from Ashu by Pharmacy II's counsel:

Q.    Thank you.  And -- and what was the eventual result of the account being frozen?

A.    Well, our suppliers -- my supplier, McKesson, stopped shipping drugs to us, because we couldn't pay.

Q.    Okay.  And did you have to make any special arrangements to account for that?

A.    One second.  Um, I'm sorry.  I came back [from Africa] and I went to the bank and I could not unfreeze the account.  So -- but the main thing was to get our suppliers to ship us product.  So we started getting money from the other accounts, like from the other stores.  I mean, like $2,000 here, $3,000 here, put it together, and then deposit to the bank, so we could get our suppliers a payment, but then we could not get withdrawals out of the account, so we stopped.

And then I talked to [Jama], that maybe I'll order products for my store and give it to them, because we -- we -- we needed to continue work.

So I gave them some products, but then Palmer Pharmacy[11] started going down.  We cashed the -- we had to re-issue checks for the employees, so we cashed the checks through the other accounts, like we gave them money, because their checks could not go through.

But in the meantime, I went to the bank to open up the account.  They could not open it up.  When I came back, that's when I learned that it wasn't just frozen, that it was some lawsuit against the account.

Q.    Thank you.  Pam, we're here in a lawsuit today, and there are 12 individuals who have been here for a long time that spent almost

_____

[11]Palmer Pharmacy was an independent retail pharmacy owned by Ashu.

58

four days now. What are you asking that the jury provide Professional Pharmacy, II?

A. I just want -- I don't -- I don't really -- I mean, I went through a lot, but I just want the moneys that were withdrawn from the account, because the moneys that was withdrawn was about 116,000, but, you know, it ballooned to 116,000, because Texas Medicaid kept paying into the account. And we could not stop Medicaid from paying into the account, because that's the account they had.

So, in the meantime, we could not withdraw from the account, but we kept getting our supply vendors, Texas Medicaid, pay[ing] into the account. So the account kept growing and growing, and we're spending money trying to supply -- trying to run business and do payroll, but they kept paying to the account.

So the account ballooned up to like 116,000. It wasn't 116 to begin with, because we didn't have that much money, but because we could not use money from the account, it kept growing and growing and growing to about $116,000 when the account was -- the money was taken away.

Q. So let me just ask you, specifically, what's -- what's the amount of money that you're asking the jury to award Professional Pharmacy, II?

A. The money that was taken out of the account, which is the $116,000.

Q. Thank you.

Damages for business interruption are measured by the amount of profits lost due to the interruption. *See Sawyer v. Fitts*, 630 S.W.2d 872, 874 (Tex. App.—Fort Worth 1982, no writ); *Cmty. Pub. Serv. Co. v. Gray*, 107 S.W.2d 495, 499 (Tex. Civ. App.—El Paso 1937, no writ). While recovery for lost profits does not require that the loss be susceptible of exact calculation, the injured party must do more than show they suffered some lost profits. *Helena Chem. Co. v.*

59

*Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). The loss amount must be shown by competent evidence with reasonable certainty. *Id.* At a minimum, opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Id.* Past profits, coupled with other facts and circumstances, may establish a lost-profits amount with reasonable certainty. *Id.* at 505. Our focus is on whether damages can be shown with reasonable certainty. *Id.* This can be accomplished with a profit history or some other objective data, such as future contracts, from which lost profits can be calculated with reasonable certainty. *Id.*

Here, the evidence is undisputed that $116,683 was withdrawn from the 3775 Account, but the evidence was insufficient to establish that Pharmacy II suffered any damages due the business disruption caused by the freezing of the 3775 Account and the removal of $116,683 from the account. Pharmacy II did not present any facts, figures, or data from which lost profits could be determined or any evidence of past profits. We therefore conclude the evidence is legally and factually insufficient to support the jury's finding of $180,683.

As pointed out by JP Morgan in its ninth issue, a court of appeals may exercise its power to suggest a remittitur when there is insufficient evidence to support the full amount of damages awarded but sufficient evidence to support a lesser award. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 124 (Tex. 2009); *Bechtel Corp. v. CITGO Prods. Pipeline Co.,* 271 S.W.3d 898, 922 (Tex. App.—Austin 2008, no pet.); *see*

Tex. R. App. P. 46.3. "If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remitter of that part of the verdict. The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded." *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). In this case, the evidence is legally and factually sufficient to support a lesser damages finding of $116,683. Accordingly, we sustain JP Morgan's eighth and ninth issues in part and suggest a remittitur of $64,000, which is the difference between the jury's award of $180,683 and $116,683, the highest amount of actual damages supported by the evidence.

## I. Other Negligence Findings

The trial court submitted the issue of liability and proportionate responsibility for WaMu, Pharmacy II, Ashu, Bisong, Jama, and Cambridge to the jury. The jury found JP Morgan and Pharmacy II negligent, but it found that Ashu, Bisong, Jama, and Cambridge were not negligent. By its twelfth issue, JP Morgan argues that the evidence is legally and factually insufficient to support the jury's finding that Ashu, Bisong, and Jama, all of whom were designated as responsible third parties, were not negligent.

When, as here, a party is attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, and there is no evidence to support the finding, we review all the evidence to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767

61

S.W.2d 686, 690 (Tex. 1989).  We consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *Cent. Ready Mix Concrete*, 228 S.W.3d at 651; *City of Keller*, 168 S.W.3d at 807, 827.

When the party with the burden of proof appeals from a failure to find based on factual sufficiency, the party must show that the failure to find is against the great weight and preponderance of the credible evidence.  *Dow Chem. Co.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).  We are required to consider and weigh all of the evidence, and we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.  *Dow Chem. Co.*, 46 S.W.3d at 242; *see Pool*, 715 S.W.2d at 635.

JP Morgan contends that the evidence is insufficient to support the jury's findings that Ashu, Bisong, and Jama were not negligent because Ashu and Bisong opened the 3775 Account as a joint sole proprietorship account instead of a partnership account and none of the partners took any action to intervene in the garnishment action to prevent the agreed judgment from being entered. Ashu and Bisong testified that it was their intent to set up the 3775 Account as a partnership account for Pharmacy II and that they informed WaMu of their intent when they opened the account.  They also testified that they provided WaMu with Pharmacy II's assumed name certificate, Pharmacy II's EIN, a completed Form

62

W-9 indicating that Pharmacy II was a partnership, and a partially completed Texas Medicaid Vendor Direct Deposit Authorization bearing Pharmacy II's EIN and identifying Pharmacy II as the payee. Ashu, Bisong, and Jama testified that they used the 3775 Account as Pharmacy II's business account. After discovering in January 2008 that the 3775 Account was frozen, Jama went to several WaMu branches and contacted WaMu's attorney in an attempt to unfreeze the 3775 Account. Ashu returned from Africa early in an attempt to unfreeze the 3775 Account, but she was unsuccessful. Counsel for Bisong attempted to settle the claim with Cambridge and provided to Cambridge a letter from an assistant financial center manager at WaMu stating that the 3775 Account was a business account. Pharmacy II also hired an attorney and unsuccessfully attempted to intervene in the garnishment action.

After applying the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the jury's findings that Ashu, Bisong, and Jama were not negligent. Accordingly, we overrule JP Morgan's twelfth issue.

## J. Prejudgment Interest

In its thirteenth issue, JP Morgan asserts that the trial court's award of $22,681.12 in prejudgment interest was improper under finance code section 304.102. Section 304.102 provides that "[a] judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." Tex. Fin. Code Ann. § 304.102 (West 2006). Relying on section 304.102, JP Morgan

argues that prejudgment interest is not available on a judgment in a negligence case.

An award of prejudgment interest, however, is not limited to judgments involving wrongful death, personal injury, or property damage; general principles of equity also provide for an award of prejudgment interest. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 486–87 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g). "Where no statute controls the award of prejudgment interest, the decision to award prejudgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy in making this decision." *Citizens Nat'l Bank*, 142 S.W.3d at 487 (citing *Miga v. Jensen*, 25 S.W.3d 370, 381 (Tex. App.—Fort Worth 2000, pet. granted), *aff'd in part and rev'd in part*, 96 S.W.3d 207 (Tex. 2002)). The Bank does not argue that the trial court's award of prejudgment interest was an abuse of discretion. Accordingly, we overrule JP Morgan's thirteenth issue.

## IV. Conclusion

In summary, we overrule issues one, two, three, four, five, six, seven, ten, eleven, twelve, and thirteen. Because we hold the evidence is insufficient to support the jury's finding of $180,683, but is sufficient to support a lesser award of $116,683, we sustain issues eight and nine in part and suggest a remittitur of $64,000. *See* Tex. R. App. P. 46.3. If Pharmacy II files in this court within twenty

64

days from the date of this opinion, a remittitur of $64,000, we will reform the judgment to award Pharmacy II $99,180.55 (eighty-five percent of $116,683) in actual damages and $14,677.20 in prejudgment interest[12] and, as so reformed, affirm the trial court's judgment.  Because liability is contested, if the suggested remittitur is not timely filed, we will reverse the trial court's judgment and remand Pharmacy II's negligence claim to the trial court for a new trial on both liability and damages.  *See* Tex. R. Civ. P. 43.2(d), 44.1(b).

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DELIVERED:  December 31, 2014

---

[12]The final judgment awarded Pharmacy II prejudgment interest on the damages awarded ($180,683) at the rate of five percent simple interest from July 15, 2008, through June 29, 2011.  $14,677.20 reflects a recalculated award of prejudgment interest on damages in the amount of $99,180.55 at the rate of five percent simple interest from July 15, 2008, through June 29, 2011.  *See Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 772 (Tex. Civ. App.—Fort Worth 1990, no writ) (suggesting proportional reduction in prejudgment interest as part of suggested remittitur).